1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER BERITICH,

Plaintiff,

v.

MULTICARE HEALTH SYSTEMS, et al.,

Defendants.

CASE NO. C15-5370BHS

ORDER GRANTING IN PART
AND DENYING IN PART
MULTICARE'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING LOCAL 21'S
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Defendant United Food and Commercial Workers Washington State United Counsel, Local 21's ("Local 21") motion for summary judgment (Dkt. 49) and Defendant MultiCare Health Systems' ("MultiCare") motion for summary judgment (Dkt. 51). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On May 5, 2015, Plaintiff Christopher Beritich ("Beritich") filed a complaint against MultiCare and Local 21("Defendants") in Pierce County Superior Court for the State of Washington.  Dkt. 1-1.

On June 3, 2015, Defendants removed the matter to this Court.  Dkt. 1.

1    On January 21, 2016, Beritich filed a Second Amended Complaint ("SAC")

2  alleging (1) unlawful discrimination based on a disability in violation of the Washington

3  Law Against Discrimination ("WLAD"), RCW Chapter 49.60, and the American with

4  Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., as amended by the Civil Rights Act

5  of 1991; (2) unlawful discrimination because of Beritich's age in violation of the WLAD

6  and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623; (3) unlawful

7  interference and retaliation for family medical leave in violation of RCW Chapter 49.78

8  and 29 U.S.C. § 2611, *et seq*.; (4) breach of the duty of fair representation under a

9  Collective Bargaining Agreement ("CBA"); and (5) breach of contract.  Dkt. 23.

10    On June 22, 2016, Defendants filed motions for summary judgment.  Dkt. 49, 51.

11  On July 11, 2016, Beritich responded.  Dkt. 55.  On July 15, 2016, Defendants replied,

12  moved to strike some of Beritich's evidence, and submitted additional evidence.  Dkts.

13  70–78.  On July 21, 2016, Beritich filed a surreply.  Dkt. 80.

14                     **II. FACTUAL BACKGROUND**

15    Beritich worked as a Registered Radiologic Technologist ("RT") at MultiCare's

16  clinic in Kent, Washington.  Dkt. 52, Declaration of Karin Jones ("Jones Decl."), Ex. B at

17  23:5–19.  As an RT, Beritich's primary job responsibility involved conducting patient x-

18  rays.  *Id*. at 20:16–23:9.  Beritich worked the day shift, from 8:00 AM to 4:00 PM,

19  Monday to Friday.  For most of his shift, he was the only RT present; the evening shift

20  RT was scheduled to arrive at 2:00PM every day, and their shifts overlapped for that two-

21  hour period.  *Id*. at 27:15–21, 29:4–6.  In the summer of 2013, Stephen Katzenson

22

1  became Beritich's supervisor as the new Manager of Imaging Services for South King

2  County Clinics.  Dkt. 54, Declaration of Stephen Katzenson ("Katzenson Decl."), ¶¶ 1–2.

3  　　　　The main factual dispute involves Beritich's federal and state RT registrations.

4  MultiCare requires, as a condition of the job, that all RTs be "[c]ertified with the State of

5  Washington Department of Health."  Dkt. 53, Declaration of Julie Richards ("Richards

6  Decl."), ¶ 7, Ex. A at 1, Ex. D at 2; Katzenson Decl., ¶ 8.  In addition, MultiCare requires

7  that Registered RTs like Beritich maintain their American Registry of Radiologic

8  Technologists ("ARRT") registration.  *Id.*  MultiCare's Licensure, Certification and

9  Registration Policy provides: "Each employee has the responsibility to maintain and keep

10  current his/her credential(s) as a condition of employment as long as he/she is employed

11  in a position requiring licensure, certification and/or registration."  Richards Decl., Ex. A

12  at 1.

13  　　　　Beritich testified that he knew that he could not work as an RT in the state of

14  Washington without a valid state RT certification and that MultiCare required him to be

15  certified with the state and registered with the ("ARRT").  Jones Decl., Ex. A at 26:14–

16  27:5.  He further testified that he knew of the Licensure, Certification and Registration

17  Policy and of his responsibilities under that policy to maintain and keep current his state

18  RT certification and ARRT registration as a condition of employment.   *Id*. at 35:18–

19  36:7.

20  　　　　While the circumstances surrounding Beritich's registration renewals may be

21  disputed, Beritich failed to properly renew both his state RT certification and his AART

22  registration.  First, Beritich had to renew his ARRT registration every year by his

birthday, which is December 30th.  *Id*. at 36:8–10, 37:4–9.  To maintain his ARRT

registration, the AART required Beritich to complete 24 credits of continuing education

("CE") and report those credits to the ARRT every two years by the last day of the month

preceding his birthday.  *Id*. at 37:14–24, 39:17–20.  Taking the facts in the light most

favorable to Beritich, he claims that he failed to compete the required CE hours by the

deadline of November 2013.  Dkt. 56, Declaration of Chris Beritich ("Beritich Decl."), ¶

14.  AART placed him on CE Probation allowing Beritich to complete the required hours

by May 31, 2014.  *Id*., ¶¶ 14–15.  Beritich completed more than the required hours and

submitted the required form on May 30, 2014.  *Id*., ¶ 15.  Due to Beritich's failure to

properly complete the form, AART did not accept the form, returned Beritich's

paperwork and registration fee, and sent Beritich a form titled "Application for

Reinstatement of Registration."  *Id*. , ¶¶ 18–19.

　　　　Second, Beritich's state RT certification is also due for renewal on his birthday,

December 30.  *Id*., ¶ 12.  Beritich claims that he thought he had mailed in the renewal

form, but later found out that he did not.  *Id*.  Due to his failure to renew it, Beritich's

state RT certification expired by January 1, 2014.  Jones Decl., Exh. A. at 53:9–12.

Beritich admits that, from January 1, 2014 until his state RT certification was reinstated

on or about July 17, 2014, he could not practice as an RT in the state of Washington.  *Id*.

at 53:9–25.  In other words, Beritich worked at the Kent Clinic for nearly seven months

without a valid state RT certification.

　　　　On July 16, 2014, Employee Data Management Assistant Serina Reese discovered

that Beritich's state RT certification and ARRT registration were both expired. Katzenson

1   Decl., Ex. B.  Ms. Reese notified Beritich's supervisor, Mr. Katzenson, and Julie

2   Richards, the Labor Relations Consultant in MultiCare's HR Department who supports

3   the South King County Clinics.  *Id.*, ¶ 10, Ex. B; Richards Decl., ¶ 11.  Ms. Reese

4   directed Mr. Katzenson to remove Beritich from the schedule until he could submit proof

5   of valid credentials.  Katzenson Decl., Ex. B.

6          Mr. Katzenson was out of town but he immediately contacted Beritich by

7   telephone and instructed him to remove himself from the schedule.  *Id.*, ¶ 11; Jones Decl.,

8   Ex. A at 75:4–10.  In the following days, Beritich renewed both his state RT certification

9   and his ARRT registration.  Katzenson Decl., ¶ 12.  He returned to work on Tuesday,

10  July 22, 2014.  Beritich Decl., ¶ 22.

11         Upon his return to town, Mr. Katzenson had several discussions with Ms. Richards

12  regarding the level of discipline to impose.  Katzenson Decl., ¶ 13; Richards Decl., ¶ 12.

13  Mr. Katzenson states that he viewed Beritich "as a solid, long-time employee" and was

14  initially hesitant to terminate his employment.  Katzenson Decl., ¶ 13.  Ms. Richards,

15  however, opined that discharge was the appropriate level of discipline given the time that

16  Beritich worked without a valid state RT certification and ARRT registration, and the fact

17  that Beritich allowed both his state RT certification and ARRT registration to lapse

18  simultaneously.  *Id.*  Ultimately, Mr. Katzenson agreed with Ms. Richards's position.  *Id.*

19  Mr. Katzenson met with Beritich on July 24, 2014, and informed him of MultiCare's

20  decision to terminate his employment.  Katzenson Decl., ¶ 14.

21         The same day that MultiCare terminated Beritich, he was approved for additional

22  FMLA leave.  Beritich suffers from rheumatoid arthritis, and Beritich admits that his use

1  of FMLA for arthritis flare-ups was increasing over the years.  Beritich Decl., ¶ 10.

2  According to MultiCare's records, Beritich's FMLA hours were as follows: 30 hours of

3  leave in 2010; 50 hours of leave in 2011; 170 hours of leave in 2012; 390 hours of leave

4  in 2013; and 302 hours of leave through July 24, 2014.  *Id.*  In fact, in July 2013, Mr.

5  Katzenson emailed Mason Hudson, a human resources consultant for MultiCare,

6  regarding Beritich's "sudden spike untilizing FMLA."  Dkt. 57, Declaration of Joe

7  Carillo, Exh. 8.  Mr. Katzenson requested that human resources consider transferring

8  Beritich to a different site because his FMLA usage affected operations in Kent as

9  Beritich was the lone RT in Kent.  *Id.*

10         In June 2014, one month before he was terminated, Beritich submitted a request

11  for additional FMLA leave.  On June 26, 2014, Matrix, the third-party company that

12  manages MultiCare's FMLA requests, sent Mr. Katzenson an email informing him of

13  Beritich's request for additional FMLA leave.  Beritich Decl., Exh. 6.  On July 24, 2014,

14  a few hours before Mr. Katzenson informed Beritich he would be terminated, Matrix sent

15  Mr. Katzenson another email informing him that Beritich was approved for additional

16  FMLA leave up to one to two hours per event, or flare-up, with up to five events per

17  week plus an additional one to two days per month.  *Id.*  Beritich states that he was

18  terminated on July 24, 2014 toward the end of his shift, which is normally 4:00 PM.  *Id.*,

19  ¶ 25.  Neither Mr. Katzenson nor Ms. Richards state when the decision was made to

20  terminate Beritich.  In other words, MultiCare fails to submit evidence showing that the

21  decision to terminate was made before Matrix emailed Mr. Katzenson approving

22  Beritich's FMLA leave.  Although Ms. Richards asserts that she was unaware of

1    Beritich's disability and FMLA leave requests when she discussed and decided his

2    termination, Richard Decl. ¶ 19, Mr. Katzenson knew of Beritich's FMLA history and

3    new FMLA request and may have known of Matrix's approval of Beritich's new FMLA

4    request.

5         Regarding the treatment of other employees, Mr. Katzenson subsequently learned

6    of another RT, Bernadine Sanders, who had received a lower level of discipline after the

7    lapse of her state RT certification.  Katzenson Decl., ¶ 15.  Mr. Katzenson therefore

8    discussed that issue with his supervisor, Jill Taylor, as he wanted to ensure that Beritich

9    had been treated fairly.  *Id.*  Mr. Katzenson even suggested reinstatement of Beritich if

10   warranted.  *Id.*  Ms. Taylor followed up on Mr. Katzenson's concerns, discussing Ms.

11   Sanders's circumstances with the Director of Employee and Labor Relations, Jody Smith.

12   *Id.*; Jones Decl., Ex. G at 14:9-17.  Ms. Smith confirmed that Ms. Sanders's situation

13   differed from that of Beritich in that: (1) Ms. Sanders had followed the steps to renew her

14   state RT certification online, but had been unaware that a malfunction with the state

15   website prevented the renewal from going through; and (2) Ms. Sanders had no

16   simultaneous lapse of her ARRT registration.  Katzenson Decl., ¶ 15; Jones Decl., Ex. B

17   at 116:18–118:14.

18        Beritich also references another younger employee, Mr. C. Fanta, who was treated

19   less severely for a state certification lapse.  While the discipline notice does not state the

20   reason for the lapse, MultiCare has submitted evidence to show that Mr. Fanta was

21   unaware that he needed to renew the certification because he thought it was good for his

22   life.  Dkt. 74, Exh. B. at 48:20–24.

1    Beritich grieved his termination through his union, Local 21.  On July 29, 2014,

2  Local 21 filed a grievance and information request on Beritich's behalf.  Dkt. 49-2 at

3  181–82.  On September 4, 2014, the parties held a grievance meeting.  Richards Decl.,

4  Exh. F.  On September 17, 2014, Ms. Richards denied the grievance.  *Id.*  Pursuant to the

5  CBA, if the matter is not resolved, the employee or the union shall appeal the grievance

6  in writing within seven days.  Dkt. 49-2 at 41.  On September 26, 2014, Local 21 moved

7  the grievance to Step 2 of the grievance procedure.  Richards Decl., Exh. G.  Local 21

8  continued to investigate the grievance and requested additional information from

9  Beritich.  Dkt. 49-2 at 183.  On January 8, 2015, Local 21 representative Kendra

10  Anderson wrote Beritich informing him of its decision not to continue to pursue the

11  grievance.  *Id.*  Ms. Anderson also stated that Beritich failed to gather additional

12  information to support his grievance.  *Id.*

13    On January 26, 2015, Beritich appealed closing his grievance to Local 21's

14  executive board.  *Id.* at 184.  On June 8, 2016, Local 21 representative Lisa Oakland

15  wrote to Beritich informing him that a meeting with the executive board was scheduled

16  for June 25, 2016.  *Id.* at 185.  Beritich did not attend the meeting, and the board

17  subsequently denied his appeal.  *Id.* at 146.

18                                    **III. DISCUSSION**

19  **A.    Motion to Strike**

20    MultiCare moves to strike portions of Beritich's declaration and Mr. Carvallo's

21  declaration.  Dkt. 77.  While the Court agrees with MultiCare that these declarations

22  contain vast amounts of hearsay, speculative and argumentative statements, and ultimate

1   conclusions on issues of law, the Court declines to address every objection.  Instead, the

2   Court will specifically cite the information it relies upon in reaching its decision and will

3   avoid relying on inadmissible evidence.

4        MultiCare improperly submitted additional evidence with its reply.  *Karpenski v.*

5   *Am. Gen. Life Co., LLC*, 999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014) ("As a general

6   rule, a movant may not raise new facts or arguments in his reply brief.").  Beritich,

7   however, failed to contest this evidence even though he filed a surreply.  *See* Dkt. 80.

8   Therefore, the Court will accept MultiCare's supplemental evidence because Beritich

9   failed to object to it.

10  **B.     Summary Judgment**

11       MultiCare moves for summary judgment on all of Beritich's claims.  Local 21

12  moves for summary judgment on Beritich's breach of the duty to fair representation

13  claim.  Although neither Local 21 nor Beritich address Beritich's breach of contract

14  claim, it appear that the claim is subsumed in the breach of the duty to fair representation

15  claim because Beritich fails to identify a breach of any other provision of his union

16  contract.  Although Beritich submitted a mountain of exhibits to support his position, *see*

17  Dkts. 56–61, 63–68, the Court is unable to locate any contract between Beritich and

18  Local 21.

19       **1.     Standard**

20       Summary judgment is proper only if the pleadings, the discovery and disclosure

21  materials on file, and any affidavits show that there is no genuine issue on any material

22  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

1    The moving party is entitled to judgment as a matter of law when the nonmoving party

2    fails to make a sufficient showing on an essential element of a claim on which the

3    nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4    (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

5    could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

6    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

7    present specific, significant probative evidence, not simply "some metaphysical doubt").

8    *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

9    if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

10   jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

11   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

12   626, 630 (9th Cir. 1987).

13          The determination of the existence of a material fact is often a close question. The

14   Court must consider the substantive evidentiary burden that the nonmoving party must

15   meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

16   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

17   issues of controversy in favor of the nonmoving party only when the facts specifically

18   attested by that party contradict facts specifically attested by the moving party. The

19   nonmoving party may not merely state that it will discredit the moving party's evidence

20   at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

21   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

22

1    nonspecific statements in affidavits are not sufficient, and missing facts will not be

2    presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3        **2.      Age Discrimination**

4        "We hold that a plaintiff bringing a disparate-treatment claim pursuant to the

5    ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause

6    of the challenged adverse employment action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S.

7    167, 180 (2009).  "The burden of persuasion does not shift to the employer to show that it

8    would have taken the action regardless of age, even when a plaintiff has produced some

9    evidence that age was one motivating factor in that decision."  *Id.*

10       In this case, Beritich has failed to submit sufficient uncontroverted evidence to

11   establish that age was the "but-for" cause of his termination.  The Court, however, is

12   precluded from basing its summary judgment decision on this lack of evidence.  *Shelley*

13   *v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) ("nothing in *Gross* overruled our cases

14   utilizing [the *McDonnell Douglas*] framework to decide summary judgment motions in

15   ADEA cases. The *McDonnell Douglas* test is used on summary judgment, not at trial.")

16   Thus, the Court will analyze the issues and evidence under the burden shifting framework

17   of the *McDonnell Douglas* test.

18       Under the relevant test, Beritich must first establish a *prima facie* case of age

19   discrimination.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280–81 (9th Cir. 2000).

20   If he succeeds, the burden of production shifts to MultiCare to articulate a legitimate non-

21   discriminatory reason for its adverse employment action.  *Id.* at 1281.  It is then

22

1   Beritich's task to demonstrate that there is a material genuine issue of fact whether the

2   employer's purported reason is pretext for age discrimination.  *Id.*

3           **a.**    ***Prima Facie* Case**

4         A "*prima facie* case requires evidence adequate to create an inference that an

5   employment decision was based on a[n] [illegal] discriminatory criterion."  *O'Connor v.*

6   *Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (internal quotation marks

7   omitted) (alterations in original).  The elements of a *prima facie* case alleging

8   discriminatory termination are that Beritich: (1) was at least forty years of age; (2) was

9   performing his job satisfactorily; (3) was discharged; and (4) was replaced by a

10  substantially younger employee with equal or inferior qualifications or discharged under

11  circumstances otherwise "giving rise to an inference of age discrimination."  *Diaz v.*

12  *Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *Coleman*,

13  232 F.3d at 1281).

14        In this case, Beritich fails to submit evidence on every element of his claim.

15  Although Beritich meets the first three elements, there is no evidence on the fourth

16  element.  Beritich admits that "it is not the replacement that is important" and, instead,

17  relies on circumstances otherwise giving rise to an inference of age discrimination.  Dkt.

18  55 at 20–21.  Beritich argues that such an inference exists based on the "difference in

19  treatment of employees with a 9 month certification lapse, age 43 and a 2 year

20  certification lapse, age 27 compared to Beritich, age 57."  *Id.*  MultiCare counters this

21  evidence by noting that Beritich submitted, "but conveniently ignored . . . disciplinary

22  notices for other employees who were not terminated for State RT Certification or ARRT

1  Registration lapses and who were 56 and 59 years old at the time of the discipline." Dkt.

2  77 at 11 n.7.  This creates a balance of evidence with two employees in Beritich's favor

3  and two in MultiCare's favor.  Therefore, the Court concludes that Beritich has failed to

4  submit adequate evidence to establish a *prima facie* case of age discrimination under

5  circumstances otherwise "giving rise to an inference of age discrimination." *Diaz*, 521

6  F.3d at 1207.

7                **b.**    **Legitimate Reason**

8          Assuming for argument that Beritich has established a *prima facie* case, MultiCare

9  has set forth legitimate reasons for Beritich's termination.  Regarding Ms. Sanders,

10  MultiCare has submitted evidence to show that her lapse was due to a malfunction with

11  the Government's website, and she did not have simultaneous lapses in federal and state

12  certifications.  Katzenson Decl., ¶ 15.  Similarly, Mr. Fanta was a new RT who claimed

13  he was unaware of the requirement to renew his state certification every other year.  Dkt.

14  74, Exh. B. at 48:20–24.  Contrary to these circumstances, MultiCare asserts that

15  Beritich's lapses were more severe "given the length of time that [Beritich] worked

16  without a valid State RT Certification and ARRT Registration, as well as the fact that

17  [Beritich] allowed both his State RT Certification and ARRT Registration to lapse

18  simultaneously."  Richards Decl., ¶ 12.  The Court concludes that MultiCare has met its

19  burden to establish a legitimate non-discriminatory reason for its adverse employment

20  action.

21

22

1          c.       **Pretext**

2          The burden now shifts to Beritich to establish a material genuine issue of fact

3   whether the MultiCare's purported reason is pretext for age discrimination.  *Coleman*,

4   232 F.3d at 1281.  Beritich may prove pretext with direct or circumstantial evidence.

5   *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998), *as amended*

6   (Aug. 11, 1998).  Beritich presents no direct evidence of discrimination.  Thus, Beritich

7   must present circumstantial evidence that is "'specific' and 'substantial' in order to create

8   a triable issue with respect to whether the employer intended to discriminate . . . ."  *Id*. at

9   1222.  Beritich must produce evidence beyond that which established the *prima facie*

10  case.  *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

11         In this case, Beritich has submitted no additional circumstantial evidence.  Instead,

12  Beritich argues that an employer's shifting explanation for its action establishes pretext.

13  Dkt. 55 at 21–22.  The Court agrees with Beritich that "the fact that a defendant's

14  rationale has shifted over time would seem likely to generate serious adverse inferences

15  as to the pretextual nature of its explanations."  *Norris v. City & Cty. of San Francisco*,

16  900 F.2d 1326, 1331 (9th Cir. 1990).  Under this case law, Beritich asserts that MultiCare

17  now bases its termination decision on Beritich's failure to return registration fees that

18  MultiCare supposedly reimbursed Beritich for even though Beritich failed to register with

19  the state or AART. Dkt. 55 at 21–22.  Beritich, however, fails to show that this is a

20  shifting rationale.  MultiCare has not abandoned the original rationale of Beritich's

21  failure to renew both registrations and working as an unregistered and uncertified RT for

22  seven months.  Dkt. 51 at 19–21.  While it is unclear why MultiCare raised Beritich's

1    failure to return the fees, the recitation of these facts establishes no shifting rationale that

2    generates serious adverse inferences.  Absent any additional specific evidence raising an

3    inference of age discrimination, Beritich has failed to show a triable issue of fact.

4    Therefore, the Court grants MultiCare's motion on Beritich's claims for age

5    discrimination.

6           **3.    Disability Discrimination**

7           To prove disability discrimination under the ADA and the WLAD, Beritich must

8    show: (1) he has a disability; (2) he is a qualified individual, meaning he can perform the

9    essential functions of his job with or without a reasonable accommodation; and (3) he

10   suffered an adverse employment action on the basis of his disability.  *Nunes v. Wal-Mart*

11   *Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *Grill v. Costco Wholesale Corp.*, 312

12   F. Supp. 2d 1349, 1354 (W.D. Wash. 2004) ("Washington state courts have noted that

13   state law relating to disability discrimination substantially parallels federal law, and

14   courts should look to interpretations of federal antidiscrimination laws, including the

15   ADA, when applying the WLAD.")  Discrimination claims under the ADA are subject to

16   the *McDonnell Douglas* burden-shifting framework.  *Curley v. City of N. Las Vegas*, 772

17   F.3d 629, 632 (9th Cir. 2014).

18          In this case, there is not a single piece of evidence to establish that Beritich was

19   terminated due to his disability.  While there is evidence to show that his increased use of

20   FMLA time to accommodate his disability raised concerns with his manager, Beritich

21   fails to show that these concerns establish a disability discrimination claim.  Moreover,

22   Beritich cites no authority for the proposition that a disability discrimination claim can

1   logically overlap with an FMLA interference claim.  Even if Beritich somehow

2   established a *prima facie* case, MultiCare's legitimate reason for its termination is still

3   valid.  Then, Beritich has submitted no specific or substantial evidence to establish

4   pretext for disability discrimination. *Godwin*, 150 F.3d at 1222.  Therefore, the Court

5   grants MultiCare's motion on Beritich's disability discrimination claims.

6       **4.**    **Leave Retaliation**

7       Under the FMLA, "it is 'unlawful for any employer to discharge or in any other

8   manner discriminate against any individual for opposing any practice made unlawful by

9   this subchapter.'"  *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011)

10   (quoting 29 U.S.C. § 2615(a)(2)).  "[W]here an employee is punished for opposing

11   unlawful practices by the employer, the issue then becomes one of discrimination and

12   retaliation."  *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) (citing

13   *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)).  The

14   Washington Family Leave Act "mirrors its federal counterpart and provides that courts

15   are to construe its provisions in a manner consistent with similar provisions of the

16   FMLA."  *Washburn v. Gymboree Retail Stores, Inc.*, 2012 WL 5360978, *7 (W.D. Wash.

17   Oct. 30, 2012).

18       In this case, Beritich fails to submit evidence that he opposed any unlawful

19   practice.  Beritich claims that he "asserted to both Local 21 and MultiCare his belief that

20   his firing was motivated by his FMLA recertififcation." Dkt. 55 at 15.  These assertions,

21   however, implicitly assume that Beritich had already been terminated and, therefore, fail

22   to show that MultiCare could have terminated him again or otherwise discriminate

1  against him for such alleged opposition.  Beritich also claims that he "rais[ed] concerns

2  about Katzenson's animosity about his FMLA use . . . ."  *Id*.  Beritich cites no evidence

3  to support this assertion.  While Beritich declares that "Katzenson was somewhat short

4  with [Beritich] whenever [they] discussed [his] disability" and that  Katzenson "would

5  often grimace or make a sigh when [Beritich] told him [he] needed leave because of [his]

6  arthritis," Beritich Dec., ¶ 9, this is not evidence of Beritich opposing an unlawful

7  practice.  If anything, it is evidence of unlawful interference with FMLA leave, which is

8  insufficient itself to support a claim for retaliation.  Therefore, the Court grants

9  MultiCare's motion on Beritich's claim for leave retaliation.

10  **C.    Leave Interference**

11      An employer may not "interfere with, restrain, or deny the exercise of or the

12  attempt to exercise" FMLA rights.  29 U.S.C. § 2615(a)(1); RCW 49.78.300(a)(a).  That

13  includes the prohibition that "employers cannot use the taking of FMLA leave as a

14  negative factor in employment actions, such as hiring, promotions or disciplinary actions

15  . . . ."  29 C.F.R. § 825.220( c).  An employee may prevail on a claim that an employer

16  interfered with his rights by terminating him in violation of FMLA by showing,

17      by a preponderance of the evidence that [his] taking of FMLA-protected
18      leave constituted a negative factor in the decision to terminate [him]. [He]
        can prove this claim, as one might any ordinary statutory claim, by using
        either direct or circumstantial evidence, or both.
19

20  *Liu*, 347 F.3d at 1135–36 (quoting *Bachelder*, 259 F.3d at 1125).

21      In this case, taking the evidence and reasonable inferences in the light most

22  favorable to Beritich, he has shown that using FMLA leave and approval for additional

1    FMLA leave may have constituted a negative factor in MultiCare's decision to terminate

2    him.  Mr. Katzenson requested that human resources consider a transfer of Beritich

3    because of Beritich's increase in FMLA use.  Moreover, Mr. Katzenson knew of the fact

4    that Beritich had submitted another FMLA request in June of 2014.  It is also a possible

5    and reasonable inference that Mr. Katzenson knew of the fact that Matrix approved this

6    request before he terminated Beritich.  Although Ms. Richards declares that she was

7    unaware of Beritich's FMLA use and FMLA request, it is up to the factfinder to

8    determine the weight of that testimony.  In other words, the Court finds that a reasonable

9    inference exists that Beritich's FMLA use and requests were discussed when Ms.

10   Richards and Mr. Katzenson debated a punishment for Beritich's misconduct.  The

11   inference is supported by the fact that Richards admitted that, if Beritich had only let his

12   AART certification lapse, he probably would not have been punished at all.  Dkt. 59-4 at

13   84.  Because Beritich must only show that the FMLA use was a "negative factor" in the

14   termination decision, the Court concludes that Beritich has submitted sufficient evidence

15   to create questions of material fact that preclude summary judgment on these claims.

16   Accordingly, the Court denies MultiCare's motion on Beritich's FMLA interference

17   claims.

18        While MultiCare may disagree with this conclusion, it has relied on incorrect

19   authorities to support its position.  For example, MultiCare argues that Beritich "cannot

20   meet his burden of demonstrating that his discharge was *due to* his use of FMLA use,"

21   Dkt. 51 at 13–14 (emphasis added), and that his evidence "falls far short" of the evidence

22   required to show pretext, Dkt. 77 at 10.  Under binding authority, Beritich does not have

1   to show "but-for" causation relating to his termination nor pretext.  "While other circuits

2   have applied the *McDonnell Douglas* framework to FMLA termination cases, this Circuit

3   . . . explicitly declined to apply this framework."  *Liu*, 347 F.3d at 1136 (citing

4   *Bachelder*, 259 F.3d at 1125).  Instead, the Ninth Circuit requires the plaintiff to show

5   only that the "taking of FMLA-protected leave constituted a negative factor in the

6   decision to terminate" him.  *Id.* (citing *Bachelder*, 259 F.3d at 1124).  With such a low

7   standard, it is questionable whether summary judgment would ever be appropriate on an

8   FMLA interference claim.  Regardless, summary judgment is not appropriate.

9   **D.    CBA**

10       "A union owes a duty of fair representation to those it represents, and an employer

11   must honor the terms of a CBA to which it is a party."  *Bliesner v. Commc'n Workers of*

12   *Am.*, 464 F.3d 910, 913 (9th Cir. 2006).  "An aggrieved party may bring a hybrid fair

13   representation/§ 301 suit against the union, the employer, or both."  *Id.*

14          Such a suit, as a formal matter, comprises two causes of action. The suit
against the employer rests on § 301, since the employee is alleging a breach

15          of the collective bargaining agreement. The suit against the union is one for
breach of the union's duty of fair representation, which is implied under the

16          scheme of the National Labor Relations Act. Yet the two claims are
inextricably interdependent. To prevail against either the company or the

17          Union, . . . [employee-plaintiffs] must not only show that their discharge
was contrary to the contract but must also carry the burden of

18          demonstrating breach of duty by the Union.

19   *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983) (citations and

20   internal quotations omitted; alteration in the original).

21       In this case, Defendants move for summary judgment on both the employer's duty

22   and the union's duty.  Local 21 also moves for summary judgment on the issue of

1  whether Beritich exhausted his administrative remedies.  The Court will only address the

2  issues of the union's duty and Beritich's failure to exhaust because the employer's duty is

3  based on whether MultiCare had "just cause" to terminate Beritich, which is a debatable

4  question.

5       **1.    Fair Representation**

6       "A union breaches its duty of fair representation when its 'conduct toward a

7  member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'"

8  *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 879 (9th

9  Cir. 2007) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).  "[I]t has long been the

10  rule—both in this circuit and elsewhere—that a showing of mere negligence in grievance

11  processing is insufficient to constitute a breach of Section 8(b)(1)(A)."  *Eichelberger v.*

12  *N.L.R.B.*, 765 F.2d 851, 854 (9th Cir. 1985).

13       In this case, Beritich has failed to show that Local 21's actions were arbitrary,

14  discriminatory, or in bad faith.  First, Beritich argues that the union acted arbitrarily in

15  failing to appeal the step 1 denial in a timely fashion.  Dkt. 62 at 20–21.  While it appears

16  that Local 21 missed the deadline by at least a day, Beritich has submitted no evidence of

17  prejudice due to this failure.  Beritich alleges that his rights were completely exhausted,

18  but this is hollow rhetoric.  *Teamsters Local Union No. 117 v. Washington Dep't of*

19  *Corr.*, 789 F.3d 979, 994 (9th Cir. 2015) ("Argument without evidence is hollow rhetoric

20  that cannot defeat summary judgment.").  Although failing to meet the deadline may have

21  barred his step 2 grievance, Beritich submits no evidence that MultiCare was unwilling to

22  waive this defense.  Moreover, the CBA states that either Beritich or Local 21 could

1  appeal the step 1 denial, which precludes Beritich from placing all of the blame on the

2  union.  *See Eichelberger*, 765 F.2d at 855 ("union negligence [must] be the solitary and

3  indivisible cause of the complete extinguishment of an employee's grievance rights.").

4  While Beritich may argue some form of estoppel because Local 21 failed to inform him

5  that he could both appeal the step 1 denial and pursue his step 2 grievance on his own, he

6  has failed to show any reliance on Local 21's sole representation on his behalf.

7  Therefore, the Court finds that Local 21's failure to timely appeal creates no question of

8  fact on this issue.

9          Second, Beritich argues that Local 21 failed to investigate his FMLA and disparate

10  treatment claims.  Dkt. 62 at 20–21.  Again, this is hollow rhetoric because Beritich

11  submits no evidence that establishes Local 21's failure to investigate any legitimate

12  claim.  The discrimination claims are baseless and the FMLA claim must be resolved by

13  a trier of fact.  It is unclear what further investigation could have been done given that,

14  after full litigation discovery, Beritich has submitted two emails that support his FMLA

15  claim.  Moreover, Local 21 has submitted evidence to support the contention that Beritich

16  failed to fully cooperate with Local 21's investigation.  Thus, Beritich has failed to show

17  that the union's alleged negligent investigation extinguished any of his rights.

18  Accordingly, the Court finds that Beritich has failed to submit sufficient evidence to

19  create a question of fact on this issue.

20          Third, Beritich argues that Local 21 handled his grievance in a discriminatory

21  manner.  Dkt. 62 at 22.  "To establish that the union's exercise of judgment was

22  discriminatory, a plaintiff must adduce 'substantial evidence of discrimination that is

1  intentional, severe, and unrelated to legitimate union objectives.'" *Beck v. United Food*

2  *& Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007) (quoting

3  *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403

4  U.S. 274, 301 (1971)).  Beritich has submitted no evidence to show intentional or severe

5  discrimination, let alone substantial evidence.  Therefore, the Court finds that Beritich

6  has failed to establish questions of material fact on this issue and grants Defendants'

7  motions on Beritich's hybrid § 301 claim.

8          **2.      Failure to Exhaust**

9          In this circuit, when a party moves for summary judgment in a Section 301 action

10  citing failure to exhaust internal union remedies, the moving party must first establish the

11  availability of adequate internal union remedies; the burden then shifts to the party

12  opposing the motion to respond by affidavits or otherwise and set forth specific facts

13  showing that exhaustion of remedies would have been futile.  *Scoggins v. Boeing Co.*,

14  742 F.2d 1225, 1230 (9th Cir. 1984).  "The determination whether to require exhaustion

15  is left to the sound discretion of the trial court."  *Id*. at 1229 (citing *Fristoe v. Reynolds*

16  *Metal Co.*, 615 F.2d 1209, 1214 (9th Cir. 1980)).

17          In this case, it is unclear whether Beritich failed to exhaust his remedies.  Beritich

18  failed to attend the meeting with the executive board, but Local 21 fails to show that this

19  fact is dispositive.  For example, if a party fails to appear for a summary judgment

20  hearing, the Court may not consider that failure as a waiver of its opposition to summary

21  judgment.  Moreover, if failure to appear at the meeting constitutes a waiver, then this

22  raises serious questions regarding the adequacy of the internal union remedies.  While the

1    Court is not condoning a member's failure to appear, the Court is unable to conclude,

2    based on the current record, that Local 21's denial of the appeal was based on the merits

3    of Beritich's appeal as opposed to Beritich's refusal to attend the meeting.  Therefore, the

4    Court denies Local 21's motion on this issue because it has failed to meet its burden.

5                                          **IV. ORDER**

6            Therefore, it is hereby **ORDERED** that Local 21's motion for summary judgment

7    (Dkt. 49) is **GRANTED** and MultiCare motion for summary judgment (Dkt. 51) is

8    **GRANTED in part** and **DENIED in part**.  The Clerk shall terminate Local 21.

9            Dated this 27th day of October, 2016.

10

11

12                                          BENJAMIN H. SETTLE
                                           United States District Judge

13

14

15

16

17

18

19

20

21

22